**DAWES v. ALLEN, Collector of Internal Revenue.**

Civ. No. 281.

District Court, M. D. Georgia, Macon Division.

April 9, 1945.

Howard Camp & Tiller, of Atlanta, Ga., for plaintiff.

T. Hoyt Davis, Dist. Atty., and Charles W. Walker, Asst. Dist. Atty., both of Macon, Ga., for defendant.

STRUM, District Judge.

Plaintiff, E. A. Dawes, sues to recover an additional income tax payment of $11,-200.75, with interest, which he alleges was illegally assessed against him for the taxpayers' fiscal year ending October 31, 1940, refund of which has been demanded and refused.

The controversy turns upon whether or not plaintiff's business, known as Dawes Silica Mining Company, was individually owned by him, or was a partnership owned by himself and his father, W. A. Dawes, during the tax period in question. If a partnership, as plaintiff contends, the additional taxes are excessive. If individually owned, as defendant Collector contends, the taxes exacted are correct in amount.

In 1919, plaintiff organized a sand mining business in Thomas County, Georgia, under the name of Standard Sales Company. In 1923, the name was changed to Dawes Construction and Supply Company. In 1933, the name was again changed to Dawes Silica Mining Company, by which name it is still known. It has been the same business all along, only the name being changed.

As of November 1, 1939, plaintiff, E. A. Dawes and his father, W. A. Dawes, executed an agreement in writing, which purported to create, as of that date, a 50/50 partnership between them in the business in question, in consideration of the payment by each of $75,000 into the business. The instrument acknowledges that plaintiff, E. A. Dawes, had paid his share, but the share of W. A. Dawes was to be wholly paid from his share of the profits, and was a charge thereon. The undisputed testimony is that as of November 1, 1939, the net worth of the entire business was only $69,000.

At the trial, plaintiff, E. A. Dawes, frankly admitted, and the Court finds the fact to be, that this instrument was a mere pretense and sham, not regarded by either party thereto as a bona fide agreement to form a partnership. The instrument was conceived and executed solely in an effort to safeguard E. A. Dawes, the son, against the apprehended consequences of an ill-advised marriage, then in prospect between his father W. A. Dawes, who was then about 79 years old, and a lady of about 40, which marriage plaintiff viewed with disapproval. In order to defeat any claim that might be asserted by the widow of this marriage to a share in the profits of the business, after the father's death, this instrument was executed so that E. A. Dawes could claim that the father owed the business $75,000, payable out of the profits. Happily for all, the wedding never occurred, and there was no occasion to use the instrument for the purpose for which it was admittedly designed and executed.

It was immediately after execution of this instrument, however, that plaintiff began submitting partnership income tax returns, instead of individual returns, as he had done for many years previously. For the year 1940, plaintiff paid income taxes based upon a partnership status in said business. The Commissioner of Internal Revenue rejected this status and assessed additional taxes on the basis of individual ownership by E. A. Dawes, which additional taxes were paid under protest, and are here sued for. However, when plaintiff lodged his protest with defendant Collector, dated March 5, 1942, this purported partnership agreement was made the basis of the protest, plaintiff contending that the partnership was a new one formed on November 1, 1939, as stated in said written instrument.

Notwithstanding these former contentions asserting the validity and effectiveness of this agreement, plaintiff now readily concedes that it was a pretense only, executed for the purpose above stated, and that none of its provisions were ever regarded as valid or binding upon the parties. Plaintiff now takes the position that the partnership came into existence in 1919 when the business was originally organized, and that the business has ever since continued to be a partnership.

Shortly after E. A. Dawes established the business in 1919, his father, W. A. Dawes, moved from Charleston, South Carolina, to Thomasville, Georgia, and thereafter devoted his time and attention to the production end of the business, while plaintiff concentrated his efforts on the sales end. In addition to the cash withdrawals hereinafter mentioned, each of them drew a

stated salary of $100 per month from the business, which was charged to expense. The father also did some individual trading in sand lands, on which he received royalty payments from the business for mining rights, as hereinafter stated.

W. A. Dawes also advanced funds from time to time for use in the business, distributed, as follows:

| | | | |
|---|---|---|---|
| February 24, 1919 | Liberty Bond | $ 50.00 |
| 1919 or 1920 | New York Exchange | $ 300.00 |
| December 2, 1922 | Cash | $2250.47 |
| August 21, 1923 | Cash | $1500.00 |
| October 27, 1932 | Cash | $1000.00 |
| | Total – | $5100.47. |

These advances of funds were not charged to capital on the books of the business. They were simply credited to the account of W. A. Dawes, except the $300 item, which does not appear on the books at all, plaintiff testifying that this advance was for the purpose of purchasing an automobile to be used by him in the business, and that he simply endorsed the original New York Exchange over to the vendor of the automobile.

Because of the above-mentioned advances of cash, which plaintiff now contends were contributions to capital, and because of the fact that his father devoted his services to the business as his principal occupation, plaintiff contends that the father, W. A. Dawes, became a 50/50 partner in the business in 1919, and has ever since been such a partner.

This contention, however, is convincingly repelled by many circumstances and statements made by the plaintiff, which long antedated this controversy, and which occurred before it became to plaintiff's financial advantage to claim that the business was a partnership.

From 1919 to 1925, the books of the business were rather loosely and inefficiently kept, first by plaintiff, E. A. Dawes, himself, and later by a bookkeeper whom plaintiff says was inexperienced. It is difficult to form any definite judgment as to the character of the business from the manner in which the books were kept during this period, but they lean toward individual ownership by E. A. Dawes.

In 1925, however, an experienced and competent auditor took over the books. With the knowledge and approval of at least the plaintiff, if not also of W. A. Dawes, this auditor kept the books on an individual ownership basis until November 1, 1939, when the pseudo-partnership agreement was executed, at which time the books were changed to a partnership basis, and income tax returns thereafter made on that basis.

About 1936, E. A. Dawes had been seriously ill. After his recovery this auditor discussed with him the advisability of protecting his father in the event of E. A. Dawes' death, by giving the father an interest in the business. The plaintiff told the accountant on that occasion: "I don't think it makes any difference. What is mine, is his; and what is his, is mine. We will just go along like we are." This same auditor, who is a certified public accountant, conceived and drew the above-mentioned agreement, and knew the purpose of it. Nevertheless, he made it the basis of the new bookkeeping set-up in 1939, as well as of the partnership income tax returns, and the protest of the additional tax assessment, dated March 5, 1942. It is significant also that this alleged partnership agreement was executed at the beginning of the taxpayer's fiscal year, and at a time when profits were mounting rapidly, so as to render income taxes of increasing importance. It is significant also that it was suggested and prepared, not by plaintiff's legal adviser, but by his auditor and tax consultant.

From 1925 to 1939, plaintiff's income tax returns showed the income from the business as the individual income of E. A. Dawes, no claim being made that it was a partnership, although during a part of this period partnership returns were submitted for Georgia Materials Company, a partnership composed of E. A. Dawes, J. A. Glozier, and J. Monaghan, which was engaged in selling slag and building material in connection with the products of Dawes Silica Mining Company. On the income tax return of Dawes Silica Mining Company for the fiscal year ending October 31, 1940, executed by plaintiff, in answer to the question: "If you submitted a return last year, state where it was filed," plaintiff answered: "New partnership, first return."

During the years 1925 to 1940, tax returns of the business properties were submitted for State taxation on an individual basis by E. A. Dawes,—no partnership be-

ing claimed. W. A. Dawes included none of the business properties in his returns.

As real property was purchased or leased for use in the sand mining business, it was taken in the name of E. A. Dawes. W. A. Dawes also individually purchased or leased lands, but on these lands he received royalty payments from the business for the mining rights.

A statement of financial worth, dated February 24, 1940, made to Fulton National Bank, showed E. A. Dawes as sole owner. This was after the execution of the above-mentioned partnership agreement.

Intangible tax returns made to the State of Georgia for the years 1938, 1939, and 1940, executed under oath by E. A. Dawes, showed E. A. Dawes to be the sole owner of Dawes Silica Mining Company. The first such return showing W. A. Dawes as a partner, was for 1941.

On July 28, 1936, E. A. Dawes filed with the Clerk of the Superior Court, of Thomas County, Georgia, a sworn certificate required by the Georgia "fictional name" law, that E. A. Dawes was trading as Dawes Silica Mining Company. There was no mention of W. A. Dawes as a partner.

During the period from 1938 to 1944, E. A. Dawes deposited in the Fulton National Bank, Atlanta, Georgia, funds of Dawes Silica Mining Company in the aggregate sum of $163,932.08. These funds were subject to check by E. A. Dawes only. Although W. A. Dawes had authority to sign checks against the local bank account in Thomasville,—a privilege rarely exercised by him,—he had no authority to draw checks against these funds in Fulton National Bank. During the period aforesaid, 1938 to 1944, W. A. Dawes deposited in other banks, $14,123.81, although plaintiff contends that W. A. Dawes was an equal partner in the business.

From 1920 to 1940, E. A. Dawes individually drew from the business, in addition to salary, an aggregate sum of $55,656.82. During the same period, W. A. Dawes, who is asserted to be an equal partner, received from the business the sum of $13,749.99. These payments to W. A. Dawes were variously designated on the books of the business as "salary," "bonus," "compensation," "advance to employees," and "bonus to employees." These, and various items of personal expense of W. A.

Dawes, were simply charged to his personal account. During the same period, W. A. Dawes received from the business the additional sum of $7,306.25, as sand royalties on lands personally owned by him, aggregating altogether $21,056.24. In addition, plaintiff E. A. Dawes, in 1923 withdrew from the business the sum of $12,000, with which he constructed a residence. During the same year, the father, W. A. Dawes, withdrew about $2200 for the purpose of purchasing a residence. These disparities in amount are obvious, and there is nothing in the books to reconcile or explain them. There are no credits to W. A. Dawes in the books to represent the difference in the sums drawn by himself and E. A. Dawes.

Except for one instance, on December 24, 1920, very early in the history of the business, when a check in amount of $1500, designated as "dividend," was written to E. A. Dawes, and a like check to W. A. Dawes, there is no uniformity as to either time or amount in the funds drawn from the business by the two Messrs. Dawes. On the contrary, there is a great and unexplained disparity in amounts, although plaintiff now contends that W. A. Dawes was an equal partner from the inception of the business.

When the alleged partnership agreement, dated November 1, 1939, was drawn, it did not purport to evidence a pre-existing partnership theretofore resting in parol and then reduced to writing, but purported to evidence a new partnership originating on that date, in which W. A. Dawes was purchasing a one-half interest for $75,000, to be paid out of future profits.

In 1942, when a representative of the Internal Revenue Department was investigating the bona fides of the formation of the alleged partnership in 1939, he interviewed plaintiff, E. A. Dawes. This representative asked plaintiff to state the real reason for forming the partnership, whose idea it was, and when it was formed. In substance, the answer of plaintiff was that the business (not the partnership) was started in 1919; W. A. Dawes was always on a salary, but could draw what he wanted, and it was charged to his account; that W. A. Dawes could write checks, and draw out profits; that the partnership was formed in 1939 to insure W. A. Dawes of income; that E. A. Dawes' sickness brought on the partnership agreement; that in case

of sale of business, none of gain or loss would go to W. A. Dawes, and that W. A. Dawes had no liability for debts, but that it was the intention of E. A. Dawes that one-half of the profits should go to W. A. Dawes, and be considered as an account payable of the firm out of the profits. In answer to the question: "Why wasn't the partnership registered (in July, 1936) with the Clerk of the Superior Court," plaintiff answered: "Because he (plaintiff) was not holding out to the public as a partnership. E. A. Dawes was to assume all liabilities, and the only way in which W. A. Dawes was interested, was to get one-half of the profits." This conversation, which occurred as late as 1942, was not contradicted by the plaintiff.

The Commissioner's finding of "no partnership," and his assessment of the additional tax for 1940, are presumptively correct. The burden is upon plaintiff to overcome these findings. Plaintiff's evidence does not meet that burden.

W. A. Dawes appears to have advanced funds to the business during its formative and precarious years, and has drawn out of the business much more than he advanced, but the manner in which E. A. Dawes dealt with the funds and other assets of the business, and his many and varied assertions, many of them under oath, made in the normal and ordinary course of business, when there was no incentive of financial gain therefrom, that he alone owned and was carrying on the business of Dawes Silica Mining Company convincingly outweighs his present assertion that the business has all along been a partnership.

While W. A. Dawes was very active in the business, and was consulted by his son as to its conduct, and although he occupied a position superior to that of an ordinary employee, being treated largely as an equal with his son in the operating end of the business, W. A. Dawes never owned any definite, identifiable interest in the business, in a sense in which the law would recognize him as a partner.

The Court concurs in the Commissioner's finding of no partnership.

To hold otherwise would require the Court to ignore plaintiff's many prior declarations that he was the sole owner of the business, as well as the many facts which corroborate these assertions. This the Court is unwilling to do.

Judgment for defendant.